**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| SHEAUNDRA GRAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-01797-TWP-MKK |
| | ) | |
| MED-1 SOLUTIONS, LLC an Indiana Limited Liability Company, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PENDING MOTIONS**

This matter is before the Court on Plaintiff Sheaundra Graves' ("Graves") Motion for Summary Judgment (Filing No. 31), and Motion for Leave to Cite Additional Authority (Filing No. 48); and Defendant Med-1 Solutions, LLC's ("Med-1") Response to Plaintiff's Motion for Summary Judgment and Defendant's Cross Motion For Summary Judgment (Filing No. 37). Graves initiated this action alleging that Med-1 violated 15 U.S.C. § 1692c(a)(1) of the Fair Debt Collection Practices Act (the "FDCPA") by contacting her to collect on a debt at a time it knew or should have known was inconvenient (Filing No. 1). The parties' motions for summary judgment address only the issue of liability. For the reasons discussed below, Graves' motion for leave and summary judgment motion are **granted**, and Med-1's cross-motion is **denied**.

## I. BACKGROUND

Graves is a citizen of the State of Indiana, from whom Med-1 attempted to collect a defaulted consumer debt that she allegedly owed for medical services (Filing No. 1 at 1). Med-1 is an Indiana limited liability company that acts as a debt collector as defined in the FDCPA. *Id*. Med-1 was acting as a debt collector when it attempted to collect the debt owed by Graves. *Id*. at 2.

Due to financial difficulties, Graves was unable to pay her debts, including a defaulted consumer debt she owed for medical services. Sometime after this debt went into default, it was obtained by Med-1, who then attempted to collect upon it via collection calls. *Id*.

Med-1's collection attempts included calling Graves during her work hours. As a result, she engaged the law office of John Steinkamp & Associates and requested that her attorneys send a letter to Med-1 on her behalf, explaining that they may not call her between the hours of 8:00 a.m. and 6:00 p.m. because it was inconvenient due to her work schedule. *Id*. Graves' attorneys drafted letters on August 6 and 8, 2024, which Graves signed and her attorneys then mailed on her behalf to the address Med-1 had listed with the Nationwide Multistate Licensing System for Consumer Access (Filing No. 1-2, Filing No. 1-3). Med-1 agrees that it received the August 6, 2024, letter but denies receiving the August 8, 2024, letter.

Despite Med-1 receiving the August 6, 2024, letter telling it not to call Graves between the hours of 8:00 a.m. and 6:00 p.m., Med-1 called Graves on October 8, 2024, at 9:13 a.m. and left a voicemail (Filing No. 1-4). Although Graves did not answer the telephone, the phone call itself disturbed her at work when it came in (Filing No. 32-1 at 3). Graves engaged another attorney, David Phillips, and incurred additional expenses by having him send a letter to Med-1 reasserting that Graves did not want to be contacted between 8:00 a.m. and 6:00 p.m. *Id*. The additional expense allegedly totaled $260.00, though the parties dispute this amount and its admissibility (Filing No. 38 at 5).

Per Med-1's procedures, when it received the letter dated August 6, 2024, the legal assistant reviewing the letter "should have changed the disposition to cease communications and change the flag on the account to do not call, or should have provided the letter to either to the Legal Department Manager or Collections Manage." (Filing No. 32-5 at 2). The managers should have

changed the disposition to cease and change the flag on the account to "do not call," however, such measures were not taken. *Id*. Med-1 denies receipt of letters dated August 08, 2024, and October 08, 2024, from either Graves or David Philipps. (Filing No. 38-1).

Besides updating an account when Med-1 receives written correspondence and scanning such correspondence into the associated account, Med-1 does not have safeguards to make sure that all accounts are accurate (Filing No. 32-2 at 20, pp. 73:15–75:18).

## II. LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements

or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arb. Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

## III. DISCUSSION

The Fair Debt Collection Practices Act ("FDCPA") prohibits debt collectors from communicating with a consumer in connection with the collection of any debt, "at … a time or place known or which should be known to be inconvenient to the consumer." *See* 15 U.S.C. § 1692c(a)(1). Graves contends that she is entitled to judgment as a matter of law because even after

Med-1 was notified that contacting her between 6:00 a.m. and 8:00 p.m. was inconvenient, Med-1 continued to do so in violation of the FDCPA. Conversely, Med-1 contends that it is entitled to summary judgment because Graves lacks standing under Article III of the United States Constitution to bring this claim; and to the extent, if any, that it has violated the FDCPA, such violation was the result of a bona fide error. Med-1 also objects to the admissibility of certain evidence offered by Graves.

The Court will first address Graves' Motion for Leave to Cite Additional Authority (Filing No. 48), and Med-1's objection to evidence, before turning to the parties' motions for summary judgment.

**A. Graves Motion for Leave to City Additional Authority**

After briefing was completed on the parties cross-motions for summary judgment, Graves moved for leave to cite *Fain v. Med-1 Solutions, LLC*, No. 1:24-cv-2061, 2026 WL 2198700, at *2 (S.D. Ind. July 27, 2026) as additional authority (Filing No. 48). However, in addition to citing *Fain*, Graves provided three pages of argument concerning how *Fain* applies to this case. *See id*. In its response in opposition, Med-1 does not object to the Court's awareness of recently decided case law but contends that Graves has already submitted summary judgment briefing and therefore, her additional arguments constitute an additional, unauthorized brief (Filing No. 49). Med-1 also points out that the *Fain* decision issued by Judge Young is non-binding precedent on this Court. *Id*. at 2.

Med-1 is correct that the decision in Fain is not binding precedent, and correct in its assertion that Court should not consider Graves' additional arguments contained in her Motion. Accordingly, Graves' Motion for Leave is **granted in part and denied in part.** The Court shall

consider the Fain decision as non-binding authority, and will not consider Graves' arguments made in her Motion for Leave. Instead, the Court will conduct its own analysis.

**B. Med-1's Objection to the Admissibility of Evidence**

Med-1 objects to the admissibility of Graves' alleged $260.00 out-of-pocket expenses to hire an attorney to send a third letter. Med-1 argues this evidence must be excluded under Fed. R. Civ. P. 37(c)(1) because Graves failed to disclose this computation or the supporting documents during discovery (Filing No. 38 at 5). During discovery, when Med-1 it asked Graves to "please list all such damage, incidental expense, and other loss which you claim to have incurred as a result of the incidents complained of in your Complaint," Graves simply provided a vague lump sum estimate of "$1,500 in actual damages for her time, effort, out-of-pocket expenses, aggravation, and emotional distress . . . she had to take the time, effort and/or expense to have her attorney send [Med-1] an additional letter." *Id*. at 6 (quoting Filing No. 38-5 at 4–5).

Med-1 further asserts that Graves failed to produce documentation of the alleged $260.00 out-of-pocket expense and when it asked Graves to "[p]roduce any and all documentation that supports your claim for actual damages," Graves affirmed, "At present, [Graves] has no such documents, other than the documents attached to her Complaint." *Id*. at 6 (quoting Filing No. 38-2 at 2). Graves reserved the right to supplement her response but never did so.

Graves concedes that she did not submit any documentation or invoice corroborating her expenditure of $260.00 because such evidence does not exist (Filing No. 43 at 6). She explains that she simply estimated her damages to be $1,500.00, and she "has not alleged that there are any other documents related to the $260.00 expense, just the actual attorney's letter, a copy of which was attached to Ms. Graves' Complaint -- showing a letter from her attorney, on attorney letterhead, an envelope, and $.69 postage." *Id*. at 7. Graves asserts that it is not unreasonable to

extrapolate that she incurred the expense related to sending letters regardless of whether the $260.00 figure is accepted. *Id*.

The $260.00 must be excluded. Rule 26(a)(1)(A)(iii) requires a party to disclose, without awaiting a discovery request, "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). Parties are also required to supplement any Rule 26(a) disclosure "if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]" Fed. R. Civ. P. 26(e)(1)(A).

Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Musser v. Gentiva Health Services*, 356 F.3d 751, 758 (7th Cir. 2004).

Here, Graves failed to disclose to Med-1 a computation of actual damages and her perplexing argument that she alleges damages but does not allege that she has evidence of those damages does not save her from exclusion of this evidence. Even now, Graves admits that despite her present counsel being the same attorney whom she allegedly paid $260.00 to draft the October 8, 2024, letter, she has no evidence of such payment beyond the letter itself listing only a $0.69 postage fee because the evidence "does not exist." (Filing No. 43 at 6). For obvious reasons, alleged damages must be excluded when a party admits at summary judgment that they did not provide a

computation or documentation of such damages in discovery because evidence corroborating the alleged damages does not exist. Accordingly, Med-1's objection to the admissibility of Graves' alleged $260.00 out-of-pocket expenses is **sustained** and that evidence is **excluded**.

### C. The Parties' Summary Judgment Motions

The parties' summary judgment motions address only liability and thus, the Court will not reach the issue of damages in this Order. Two issues arise upon review of the parties' summary judgment briefing. Med-1 first contends that it is entitled to summary judgment because Graves lacks Article III standing (Filing No. 38 at 7). Med-1 then asserts that even if Graves has standing and Med-1 violated the FDCPA, it is entitled to summary judgment pursuant to the FDCPA's bona fide error defense. *Id*. The Court will address standing before turning to the bona fide error defense.

#### 1. Standing

"To bring a claim in federal court, a plaintiff must have Article III standing—that is, a 'personal stake' in the outcome of the lawsuit." *Fain*, 2026 WL 2198700, at *2 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020). "And standing must be established 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Fain*, 2026 WL 2198700, at *2 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Accordingly, Graves must "suppl[y] evidence of 'specific facts' that, taken as true, show each element of standing." *Spuhler*

*v. State Collection Serv., Inc.*, 983 F.3d 282, 286 (7th Cir. 2020) (quoting *Lujan*, 504 U.S. at 561). Here, the parties dispute only the first element: whether Graves suffered an injury in fact.

"A plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Fain*, 2026 WL 2198700, at *2 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)) (alteration in original). "Congress may 'elevate' harms that 'exist' in the real world before Congress recognized them to actionable legal status, [but] it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018) (citing *Spokeo*, 578 U.S. at 340–41). Rather, injuries must be concrete—those that have "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424 (quoting *Spokeo*, 578 U.S. at 341). "This includes both 'traditional tangible harms, such as physical harms and monetary harms,' and '[v]arious intangible harms,' like 'reputational harms, disclosure of private information, and intrusion upon seclusion.'" *Fain*, 2026 WL 2198700, at *2 (quoting *TransUnion*, 594 U.S. at 425).

The FDCPA was enacted to address "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). The relevant provision here is § 1692c(a)(1), which provides that a debt collector may not communicate with a consumer in connection with the collection of any debt at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. However, a violation of this provision "does not necessarily cause an injury in fact." *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021). Graves must show that her "specific FDCPA injury has a 'close historical

or common-law analogue,' although it need not be an 'exact duplicate.'" *Wood v. Sec. Credit Servs., LLC*, 126 F.4th 1303, 1309 (7th Cir. 2025) (quoting *TransUnion*, 594 U.S. at 424).

"When reviewing potential injuries for standing purposes, we are constrained by the operative complaint." *Persinger v. Sw. Credit Sys., L.P*, 20 F.4th 1184, 1190 (7th Cir. 2021). Graves' Complaint alleges that Med-1's conduct caused her intangible injuries because its actions "alarmed, confused, and emotionally distressed Ms. Graves, invaded her privacy, [and] intruded upon her seclusion[.]" (Filing No. 1 at 4). She argues that she suffered tangible injuries in the form of "time, effort and expense to try and stop [Med-1's] improper collection actions." *Id*.

Graves claims to have suffered an injury bearing a "close relationship" to the tort of intrusion upon seclusion.[1] Intrusion upon seclusion "occurs when a person intrudes . . . upon the solitude or seclusion of another or his private affairs or concerns and this intrusion would be highly offensive to a reasonable person." *Persinger*, 20 F.4th at 1192 (internal quotation marks and citation omitted). "Courts have also recognized liability for intrusion upon seclusion for irritating intrusions—such as when telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff." *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (internal quotation marks and citation omitted). However, courts "are meant to look for a 'close relationship' in kind, not degree." *Id*. Accordingly, whether Graves would prevail in a lawsuit for common law intrusion upon seclusion does not factor into the analysis. The relevant inquiry is whether the harm "alleged in her complaint resembles the harm associated with intrusion upon seclusion." *Id*.

[1] Graves alleges both invasion of privacy and intrusion upon seclusion. As the Seventh Circuit has explained, "the tort of invasion of privacy encompassed four theories of wrongdoing: intrusion upon seclusion, appropriation of a person's name or likeness, publicity given to private life, and publicity placing a person in a false light." *Persinger*, 20 F.4th at 1192. "Because the most apt of the invasion of privacy 'theories' is intrusion upon seclusion," the Court focuses its analysis there. *Pucillo v. Nat'l Credit Sys, Inc.*, 66 F.4th 634, 640 (7th Cir. 2023)).

The decision in *Fain* is helpful in determining the standing issue. In that case, Fain sued Med-1 for identical violations as those alleged by Graves—calling at a time that Med-1 knew or should have known was inconvenient in violation of § 1692c(a)(1). 2026 WL 2198700, at *1. Fain alleged that Med-1's actions "alarmed, confused, and emotionally distressed [her], invaded her privacy, [and] intruded upon her seclusion." *Id*. at *3 (alterations in original). As is the case here, Med-1 moved for summary judgment arguing first that Fain lacked standing.

In determining whether Fain had standing, Judge Young noted that "the Seventh Circuit analogized 'the harm posed by unwanted text messages' to the harm associated with intrusion upon seclusion: 'an intrusion into peace and quiet in a realm that is private and personal.'" *Id*. (quoting *Gadelhak*, 950 F.3d at 462 and n.1). "Even though '[a] few unwanted automated text messages may be too minor an annoyance to be actionable at common law,' such texts 'nevertheless pose the same *kind* of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable.'" *Id*. (quoting *Gadelhak*, 950 F.3d at 463) (alteration in original). "Beyond holding that 'unwanted text messages can constitute a concrete injury-in-fact for Article III purposes,' the [Seventh Circuit] also made clear that 'the number of texts is irrelevant to the injury-in-fact analysis." *Id*. (quoting *Gadelhak*, 950 F.3d at 463 n.2). Judge Young acknowledged that *Gadelhak* involved a violation of the Telephone Consumer Protection Act ("TCPA") but nevertheless found that such a difference did not affect the analysis under the FDCPA because "the harm caused by receiving an unwanted text message is no different than the harm caused by receiving an unwanted phone call. And because the harm is the same, there is likewise a 'close relationship' between intrusion upon seclusion and a violation of § 1692c(a)(1)." *Id*. (internal citation omitted). Agreeing with this analysis, the Court finds that Graves has Article III standing to sue Med-1.

Med-1 argues that *Freeman v. Ocwen Loan Servicing, LLC*, 113 F.4th 701 (7th Cir. 2024), counsels against standing, but *Freeman* is distinct. In *Freeman*, an error in the defendant debt collector's records caused the plaintiff's loan to erroneously appear delinquent leading to the defendant considering Freeman in default. 113 F.4th at 705. Despite Freeman informing the defendant of the error multiple times, the defendant, "[a]s part of its collection practices, . . . called [Freeman] over 12 times in a month" and "sent agents to [her] home to conduct door knocks and leave tags on her door about once a week for nearly three years." *Id*. at 706. Freeman alleged violations of 15 U.S.C §§ 1692(e)(2), (5), (10), and 1692(f)(1) of the FDCPA, which collectively prohibit debt collectors from using false, deceptive, unfair, or unauthorized debt collection practices, including misrepresenting the debt's character, amount, or legal status, threatening unlawful action, and attempting to collect unauthorized charges. *See id*. Freeman argued that consistent with *Gadelhak*, the defendant's phone calls and door knocks caused an intangible injury closely related to invasion of privacy or intrusion upon seclusion. *Freeman*, 113 F.4th at 710.

The Seventh Circuit found that receiving an unwanted telephone call in itself did not constitute a concrete injury, though it may under certain circumstances. *Id*. "But this harm means nothing if Congress has not chosen to make it legally cognizable." *Fain*, 2026 WL 2198700, at *4 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992)). To that end, Congress did not make that harm legally cognizable in the provisions of the FDCPA that the defendant allegedly violated in *Freeman*.

Here, however, Congress expressly chose to make the harm Graves alleges legally cognizable. Section 1692c(a)(1) prohibits a debt collector from communicating with a consumer at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. *See* 15 U.S.C. § 1692c(a)(1). "As soon as a debt collector communicates with a

consumer in a manner prohibited by this provision, they violate this provision and impose a harm analogous to that of the common law tort of intrusion upon seclusion. As noted by Judge Young, the same is not true of the FDCPA provisions at issue in *Freeman*." *Fain*, 2026 WL 2198700, at *4. Accordingly, the Court rejects Med-1's assertion that Graves lacks standing pursuant to *Freeman* and concludes that the unwanted telephone calls Graves received caused her to suffer a concrete injury in fact for Article III purposes. Because the Court finds that Article III standing is satisfied by Graves' alleged intangible injuries, it need not discuss her tangible injuries of time, effort, and expense in the context of standing.

**2. Bona Fide Error**

As a precursor to the Court's discussion of whether Med-1 properly invokes the FDCPA's bona fide error defense, the Court concludes that absent such defense, Med-1 violated Section 1692c(a)(1). Med-1 appears to concede that their actions violate the FDCPA as they do not argue otherwise.

As noted above, § 1692c(a)(1) prohibits debt collectors from communicating with a consumer in connection with the collection of any debt "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer." *See* 15 U.S.C. § 1692c(a)(1). Med-1 admits that it received the August 6, 2024, letter from Graves stating that calls between 8:00 a.m. and 6:00 p.m. were inconvenient (Filing No. 38 at 18). Med-1 also concedes that the legal assistant who received Graves' letter *should* have changed the disposition of Graves' case in its system to cease communication. *Id*. Accordingly, Med-1 admits to violating the FDCPA by contacting Graves at a time it admits it should have known was inconvenient.

This brings the Court to Med-1's asserted bona fide error defense. The FDCPA provides two exceptions to imposing liability on debt collectors, only one of which is relevant here. Section 1692k(c) provides that,

> A debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). To qualify for the bona fide error defense, a debt collector must make three showings under § 1692k(c): "(1) it must show that the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error . . .; and (3) it must show that it maintained procedures reasonably adapted to avoid any such error." *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 537 (7th Cir. 2005).

Med-1 spends many words explaining why it contacted Graves despite receiving her letter but such events can ultimately be distilled down to the following: Med-1 received Graves' August 6, 2024, letter explaining that it was inconvenient to be contacted between 8:00 a.m. and 6:00 p.m., however, the legal assistant did not note or change the disposition of Graves' account (Filing No. 38 at 18–20). Med-1 contends that had the legal assistant followed its procedures, properly noted the account, and moved it to the right disposition, Med-1 would not have contacted Graves. *Id*. at 19.

Med-1 next argues that the alleged violation was a result of an error despite its maintenance of policies and procedures reasonably adapted to avoid the specific violation alleged in this case. Med-1 provides a copy of its procedures for handling accounts in which a written dispute is received (*see* Filing No. 38-8). Med-1 also contends that its Policy and Procedure C6.0-Processing RP Correspondence ("Mail Procedures") is a document utilized by the staff that receives mail within the collections or legal department, which is particularly applicable to the facts here (*see*

Filing No. 38-4). The Mail Procedures provides the following steps for representatives receiving mail: "After you open the mail, scan it to the [debtor's] account. After you scan it, note the account. Be detailed in what they are wanting and/or needing from us or the client." *Id*. at 3. Med-1 asserts that the legal assistant was trained in their procedures and Section 1692k(c) "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Id*. at 22 (quoting *Kort*, 394 F.3d at 539).

In her reply, Graves argues that while Med-1 asserts that the legal assistant was trained in all of its procedures, it has provided no testimony from the legal assistant about her training, whether she understood those procedures, whether she routinely performed them, or how the error occurred (Filing No. 43 at 14). Graves contends that when Med-1 scans a document, but no note is added to the account, as is the case here, Med-1 has no process or procedure to make sure accounts are properly updated; rather, it only audits these procedures for documentation it receives if there is a complaint made or a lawsuit filed. *Id*. at 14–15 (citing Filing No. 32-2 at 20, pp. 73:15–75:18).

Graves points the Court to the Seventh Circuit's opinion in *Evans v. Portfolio Recovery Associates, LLC*, 889 F.3d 337 (7th Cir. 2018), which states the following:

> Moreover, even if we assume that [the debt collector] made an unintentional error of fact, it still is not entitled to the bona fide error defense because it did not maintain procedures reasonably adapted to avoid the error. In this context, "procedures" are "processes that have mechanical or other such 'regular orderly' steps to avoid mistakes." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010). A "thinly specified 'policy,' allegedly barring some action but saying nothing about what action to take, is [not] an adequate 'procedure' under § 1692k(c)." *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 900 (7th Cir. 2015). While the evidence demonstrates that [the debt collector] provided training sessions and a manual to employees about recognizing and processing disputes, "[t]here is no evidence that [the debt collector] has measures in place to prevent careless misreading of letters, such as having employees periodically check one another's work, for example." *Flores v. Portfolio Recovery Associates*, No. 15 C 02443, 2017 WL 5891032, at *6 (N.D. Ill. Nov. 29, 2017).

(Filing No. 43 at 15 (quoting *Evans*, 889 F.3d at 350 n.9, *abrogated on other grounds*) (cleaned up)).

Med-1 has not identified how the error occurred or shown that it has procedures in place to prevent the error in question. To Med-1's credit, they have procedures in place telling legal assistants what to do when they receive disputes in the mail such as the letters at issue in this case. However, should the legal assistant fail to follow the procedures, Med-1 has little to no safeguards in place nor consistent ways to discover such errors. For example, when Med-1's Collections Floor Manager, Michael Jude ("Jude"), was asked in his deposition, "When a document is scanned and no note is added, is there any safeguard or quality check to make sure that's updated?", he responded, "No. we wouldn't get any kind of notification that something was scanned into the account." (Filing No. 32-3 at 20 p. 73:21–25). Jude was then asked, "So if something like what happened in Ms. Graves' case were to happen, essentially, it's completely unchecked?", and he responded, "Yeah. There – there wouldn't be any way to – to – to have, like, an exception report on that or anything." *Id*. at 20 p. 74:1–6. Jude went on to explain that the only review of accounts Med-1 performs is "random audits here and there" but usually Med-1 will only check an account if a dispute occurs. *Id*. at 20 pp. 74:7–75:15.

Med-1's procedures do not satisfy the bona fide error test. *See Morris v. Choice Recovery, Inc.*, No. 18-cv-5548, 2020 WL 6381926, at 3* (N.D. Ill. Oct. 30, 2020) ("It is not enough to train employees how communications . . . *should* be handled and processed; procedures must be in place to provide reasonable assurance that errors and deviations from the prescribed procedures will be detected and remedied."). In *Fain*, Judge Young posited the question, "[w]hat if the error occurred before the receptionist was to distribute Fain's letters to the proper department mailbox?". *See Fain*, 2026 WL 2198700, at *6 (citing *Isham v. Gurstel, Staloch & Chargo, P.A.*, 738 F. Supp. 2d

986, 1000 (D. Ariz. 2010) ("[I]f a 'cease and desist' letter is lost, the paralegal will never enter the appropriate code into the account to block further communications with the debtor.") (alteration in original)). Here, the evidence shows that Med-1 has virtually no safeguards for that scenario beyond "a random audit[] here and there." (Filing No. 32-3 at 20 p. 74:10).

No reasonable jury could conclude by a preponderance of the evidence that Med-1 maintained procedures reasonably adapted to avoid errors such as the one that occurred here. At most, Med-1 simply tells legal assistants what to do when they receive mail. But if a legal assistant makes a mistake, Med-1 will not detect or remedy that mistake. Merely telling employees what to do without providing any safeguard to check their work does not constitute a reasonable procedure to avoid errors. Were the standard for a debt collector to avoid liability under the FDCPA be that the debt collector could merely tell their employees not to violate the FDCPA, the Act would cease to protect anyone. Thus, Med-1's invocation of the FDCPA's bona fide error defense fails.

Because the Court finds that Graves has Article III standing, Med-1 violated the FDCPA, and Med-1's invocation of the bona fide error defense fails, Graves' Motion for Summary Judgment is **granted** and Med-1's Cross-Motion for Summary Judgment is **denied**.

## IV. CONCLUSION

For the reasons discussed above, Graves' Motion for Leave to Cite Additional Authority (Filing No. 48) is **GRANTED in part**, Graves' Motion for Summary Judgment (Filing No. 31) is **GRANTED**, and Med-1's Cross-Motion for Summary Judgment (Filing No. 37) is **DENIED**.

Graves' summary judgment motion only addresses liability. Having determined liability, Graves is entitled to damages and attorneys' fees under the FDCPA. *See* 15 U.S.C. § 1692k. This matter is set for final pretrial conference on October 21, 2026, and trial by jury on November 16, 2026. The FDCPA provides for trial by jury in determining statutory additional damages to which

plaintiff is entitled for debt collection agency's FDCPA violations. *See Kobs v. Arrow Serv. Bureau, Inc*., 134 F.3d 893, 898 (7th Cir. 1998); *see also Katsis v. Absolute Resolutions Investments, LLC*, 2026 WL 395357, at *10 (N.D. Ill. Feb. 2026) ("[A]lthough the FDCPA's statutory damages provision says 'the court,' the Seventh Circuit has held that § 1692k(a)(2) of the FDCPA provides for trial by jury in determining statutory additional damages.") (cleaned up).

However, the parties have two other options. They can waive jury and proceed with a bench trial on the issue of damages or meet with the Magistrate Judge and attempt to reach a settlement agreement on the damages and fees issues. By no later than September 16, 2026, the parties must contact the Magistrate Judge to discuss how they wish to proceed. Regardless, whether by jury or bench, the matter will proceed to trial on November16, 2026, unless settlement is achieved beforehand. Final judgment consistent with this Order will issue once the remaining questions of damages and fees are resolved.

**SO ORDERED**.

Date: 9/3/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Nicholas Moline
MED-1 SOLUTIONS, LLC
nicholas.moline@med1solutions.com

David J. Philipps
Philipps & Philipps, Ltd
davephilipps@aol.com

Mary E. Philipps
Philipps & Philipps, Ltd.
mephilipps@aol.com

Angie K. Robertson
Philipps & Philipps, Ltd.
angie@philippslegal.com